# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DWAYNE RUSH,<br><br>      Plaintiff<br><br>      v.<br><br>KAMCO BUILDING SUPPLY CORP. OF PENNSYLVANIA, *et al.*,<br><br>      Defendants | Civil Action No. 19-1781 (CKK) |

## MEMORANDUM OPINION
(September 13, 2022)

Plaintiff Dwayne Rush ("Rush") brings this negligence action against Defendants C.J. Coakley Co., Inc. ("Coakley") and Kamco Supply Corporation of Pennsylvania ("Kamco") for injuries he sustained on March 29, 2016 while working as an electrician on a construction site. Rush alleges that improperly stored sheets of drywall fell on him. Coakley was a subcontractor responsible for installing drywall, which Kamco delivered and staged.

Pending before the Court is Defendants' [33] Joint Motion for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court concludes that Rush has failed to offer evidence allowing a reasonable factfinder to conclude that Defendants were negligent in stacking the drywall that fell on him, and so shall **GRANT** Defendants' Motion for Summary Judgment.

---

[1] The Court's consideration has focused on the following:
- Defendants' Memorandum in Support of Joint Motion for Summary Judgment ("Defs.' Mot."), ECF No. 33;
- Plaintiff's Opposition to Defendants' Joint Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. 34; and
- Defendants' Reply to Plaintiff's Opposition to Joint Motion for Summary Judgment ("Defs.' Reply"), ECF No. 35.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

1

I.     BACKGROUND

In resolving the pending motion for summary judgment, this Court "assume[s] that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." LCvR 7(h)(1). Therefore, in most instances the Court shall cite to Defendants' Statement of Material Facts Not in Dispute ("Defs.' Stmt."),[2] unless Plaintiff objects to relevant aspects of a fact proffered by Defendants. In such instances, the Court shall also cite to Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute ("Pl.'s Resp. Stmt.")[3] or otherwise indicate that the fact is disputed. The Court shall also cite directly to the record, where appropriate, to provide additional information.

In March 2016, Rush was working as an electrician at a hotel construction site located at 50 M Street SE in Washington, D.C. Defs.' Stmt. ¶ 2. Defendant Coakley was a subcontractor, performing "various work," including "the installation of drywall." *Id.* ¶ 3. Coakley purchased drywall for the project from Kamco; Kamco delivered the drywall to the site. *Id.* ¶¶ 3, 4. Kamco was also responsible for "stock[ing]" drywall at the construction site. Defs.' Mot. Ex. B, Deposition of Scott Weiss ("Weiss Dep.") 12:16–18, ECF No. 33-2. Kamco would send "stockers" on deliveries, who would meet with the foreman and "walk the areas that needed to be stocked." Pl.'s Opp'n Ex. B, Deposition of Liam Coakley ("Coakley Dep.") 21:14–22:2, ECF No. 34-2. Once Kamco's employees completed stocking, they would "walk the areas" with the project's foreman to "make sure it is stocked properly." *Id.*

---

[2] Defendants' Statement of Material Facts Not in Dispute begins on page 3 of Defendants' Memorandum in support of their Motion for Summary Judgment.

[3] Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute begins on page 4 of Plaintiff's Opposition.

According to Defendants, Kamco delivered drywall to the construction site "on a series of occasions" from March 22, 2016 through March 24, 2016. Defs.' Stmt. ¶ 4. Rush does not dispute that Kamco made drywall deliveries during that timeframe. Pl.'s Resp. Stmt. ¶ 4. However, Rush also points to Coakley's interrogatory responses, which indicate that the drywall "in question" was delivered on March 28—the day before the incident at issue in this case, which occurred on March 29, 2016. *Id.*; *see* Pls.' Opp'n Ex. C, Coakley's Supplemental Answers to Plaintiff's First Set of Interrogatories at 5, ECF No. 34-3. According to the deposition testimony of Coakley's corporate representative, after Kamco delivered and stocked the drywall, Coakley's workers did not move it before it was ready to be installed. Coakley Dep. 23:11–16. He also testified that he was on the site the day before the incident and saw the specific stack of drywall in question, which appeared to him to be "stocked properly." *Id.* 30:2–20.

On the morning of March 29, 2016, Rush was installing fireproofing on electrical outlets on the fourth floor of construction site. Defs.' Stmt. ¶ 7. Shortly after he began his shift, he walked into a different area than where he had been working; the parties dispute whether Rush entered a "hallway" or a different room. *See* Rush Dep. 55:21–22; 69:9–10 (denying that he was in "the hallway"). According to Rush, as he entered this area, "out of the corner of [his] eye," he saw "drywall was coming down . . . it was just falling down towards [him] as [he] stepped in the room." Rush Dep. 49:9–20; 50:11–17; *see also id.* 56:11–13 ("I just saw something falling towards me that I couldn't get out of the way in time."). Approximately 16 sheets of drywall fell on Rush's right leg. Defs.' Stmt. ¶ 13. The drywall was too heavy for Rush to lift off of him by himself; he yelled for help and another worker helped him move the drywall. *Id.*

Rush testified that he could not see "at what angle" the drywall was stacked before it fell. Rush Dep. 49:9–50:2; *see also id.* 70:15–19 ("I'm not sure how it was . . . I couldn't tell you what

3

angle it was at."). However, it is undisputed from the record that the drywall was not laying flat (horizontally) on the ground. Defs.' Reply to Pl.'s Resp. Stmt. ¶ 17.[4]

There were no eyewitness to the incident other than Rush. Defs.' Stmt. ¶ 22. Rush testified that he did not touch the drywall before it began to fall. *Id.* ¶ 12 (citing Rush Dep. 51:11–17). However, his testimony about whether he attempted to catch the drywall as it fell is not clear; Rush initially stated: "I thought if I put my right hand there it was going to stop it and like I said I didn't realize . . . drywall was that heavy." Rush Dep. 56:7–15. He later testified that he did not attempt to catch drywall. *Id.* 63:5–19.

Defendants have submitted as evidence a handwritten statement signed by Rush regarding the incident. The statement reads: "I was walking down [through] the hallway an[d] out of the corner of my eye I seen a stock of drywall tilting over an[d] I ran up to catch them but it was to[o] heav[y] an[d] it fell . . on the edge of my boots[.]" Defs.' Mot. Ex. D, Incident Statement, ECF No. 33-4. Rush testified that he *did* sign this statement on the same day as the incident, but that he had *not* written the statement. Rush Dep. 59:6–18. He explained that he "was asked to sign a lot of things and I was asked so many things . . . My main concern was getting to the hospital. And . . . I was getting the notion that I needed to sign things to get to the hospital. I was just trying to do whatever to get me the assistance I needed right away. I was in a lot of pain." Rush Dep. 61:4–13. Defendants have retained a certified questioned document examiner, Katherine M. Koppenhaver, who opines that the both the "handprinting" and the "signature" on the statement were written by Rush. *See* Defs.' Mot. Ex. F, Katherine M. Koppenhaver Report ("Koppenhaver Report") at 2, ECF No. 33-6.

---

[4] Defendants' Reply to Plaintiff's Response to Defendants' Statement of Material Facts Not in Dispute begins on page 1 of Defendants' Reply.

The parties have also submitted the report of Rush's retained expert, Jason Randle ("Randle Report"), a licensed professional engineer. *See* Defs.' Mot. Ex. E, ECF No. 33-5; Pl.'s Opp'n Ex. E, ECF No. 34-5; *see also* Pl.'s Opp'n Ex. F, Affidavit of Jason Randle ("Randle Aff.") ¶ 2, ECF No. 34-6. Randle's report includes photographs of "the manner in which other drywall" (i.e., not the drywall that fell on Rush) "in the incident hallway was stacked" and "unsecured." Randle Report at 7. The photographs show rectangular sheets of drywall stacked in groups and leaning against unfinished walls. *Id.* The drywall sheets are placed so that the longer edge of the stacks are on the ground. *Id.*

Mr. Randle opines that the "industry standards" applicable to the storage of drywall are provided in the Gypsum Association Standard and the Gypsum Construction Handbook. *Id.* at 8–9. According to Mr. Randle, these standards specify that drywall panels should be stacked "flat on risers placed on a solid surface" and that "[s]toring gypsum panel products on edge leaning against wall framing can pose a serious hazard." *Id.* at 8–9. However, the Gypsum Construction Handbook also provides guidelines for how to stack drywall sheets vertically:

> When this is done, be sure to leave at least 100 to 150 mm (4" to 6") of space between the bottom of the first board in the stack and the wall. Leaving less than 100 mm (4") creates a risk that the stack could be pulled over; leaving more than 150 mm (6") applies too much weight laterally against the wall.

*Id.* at 9. Randle opines that the drywall "should have been stacked horizontally (i.e. flat) or properly stored vertically[.]" *Id.* at 10. He concludes that "had the drywall been stored properly, it would not have fallen over and would not have struck and injured Rush." *Id.*

Rush filed his action in the Superior Court of the District of Columbia on March 28, 2019. *See* Compl., ECF No. 1-2. His Complaint asserts negligence claims against both Defendants, alleging that they "stag[ed]" the drywall on the construction site in a dangerous manner, including by failing to "secure" it and stacking it at an "angle that was too steep." *Id.* ¶¶ 9, 12. Kamco

removed the case to federal court based on diversity jurisdiction. *See* Notice of Removal, ECF No. 1. After completing discovery, Defendants filed their pending Motion for Summary Judgment on November 11, 2021. Defendants' motion is ripe for the Court's review.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009); *see also Sibert-Dean v. Wash. Metro. Transit Auth.*, 751 F. Supp. 2d 87, 90 (D.D.C. 2010) (requiring the non-moving party's factual representations in a sworn affidavit to be supported by facts in the record). Moreover, where "a party fails to properly support an assertion of fact or fails

to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). The district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

Rush's negligence claims against both Defendants hinge on allegations that Defendants improperly staged drywall sheets by stacking them vertically and "unsecured." *See* Compl. ¶¶ 9, 16. The Court has carefully scrutinized the entire record in this case to determine whether Rush has offered evidence sufficient to establish elements essential to his negligence claims and whether any genuine disputes of material fact remain. Having done so, the Court concludes that summary judgment in Defendants' favor is appropriate.

To demonstrate negligence in the District of Columbia, a plaintiff must establish (1) the applicable standard of care; (2) a deviation from that standard; (3) a causal connection between

such deviation and the injury. *Robinson v. Wash. Metro. Area Transit Auth.*, 774 F.3d 33, 38 (D.C. Cir. 2014) (quoting *Varner v. District of Columbia,* 891 A.2d 260, 265 (D.C. 2006)). Although issues of negligence frequently "present factual questions for the trier of fact," in some cases the "evidence is so clear and undisputed that fair-minded men can draw only one conclusion." *Grana v. Runyon*, No. CV 18-2293 (ABJ), 2020 WL 1508588, at *3 (D.D.C. Mar. 30, 2020) (internal citation omitted). Moreover, "summary judgment is appropriate if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. However, a plaintiff "can defeat a defendant's motion for summary judgment if a reasonable inference can be drawn from the evidence, properly proffered, that the alleged injury would not have occurred but for the defendant's negligence." *Tolu v. Ayodeji*, 945 A.2d 596, 601 (D.C. 2008) (citing *Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190–91 (D.C. 1990)).

Rush cites at least three different sources of a "duty" owed by Defendants to him. In his Opposition, he refers to a "common law" duty to take reasonable safety measures to prevent hazardous conditions, as well as a duty imposed by OSHA safety regulations, directing that contractors (or subcontractors) shall not require any "laborer" to work under conditions which are "hazardous, or dangerous to his health or safety. Pl.'s Opp'n at 10–11.[5] Though not cited as a

---

[5] Rush cites OSHA's Safety and Health Regulations for Construction, Subpart C § 1926.20, subsection (a)(1) of which provides: "no contractor or subcontractor for any part of the contract work shall require any laborer or mechanic employed in the performance of the contract to work in surroundings or under working conditions which are unsanitary, hazardous, or dangerous to his health or safety."

"duty" in his Rush's brief, his retained expert relies on the Gypsum Construction Handbook, quoted *supra* Section I, which purportedly sets forth the industry standards applicable to drywall storage. *Id.* at 13. For purposes of this motion, Defendants do not contest that they owed Rush a duty of care.[6]

Defendants argue that Rush has failed to proffer evidence or point to any genuine dispute of material fact supporting a "breach" of any duty of care referenced by Rush. Although the question of breach is ordinarily a question of fact for the jury, *Kindig v. Whole Foods Mkt. Grp., Inc.*, 930 F. Supp. 2d 48, 50–51 (D.D.C. 2013), Defendants contend that this case can be resolved as a matter of law because Plaintiff has not presented evidence that either Coakley or Kamco breached any duty to him. Defs.' Mot. at 9. Specifically, Defendants contend that Rush has not offered evidence demonstrating *how* the drywall that fell on him was positioned—let alone any facts sufficient for a reasonable juror to conclude that it was stored in a hazardous way or that its placement breached the standards cited by Rush's expert. *See* Defs.' Mot. at 6, 8–9, 10. The Court agrees, and so concludes that summary judgment in Defendants' favor is appropriate.

Rush contends that the manner in which Defendants placed the drywall constituted a breach of duty. Pl.'s Opp'n at 12. He relies exclusively on the opinions of his retained expert, Mr. Randle, that "unsecured" and "vertically-stacked" drywall is "dangerous." *Id.* at 13. But Rush's conclusory assertions are not grounded in evidence on the record; rather they rest on imprecise articulations of the industry standards upon which his own retained expert relies. The Randle Report cites the Gypsum Construction Handbook for the proposition that "horizontal" stacking of drywall (i.e., laying the boards flat) is the preferred method of storing drywall. Randle Report at

---

[6] Defendants indicate, however, that they "do not concede that they owed any duty to Plaintiff under the facts of this case[.]" Defs.' Reply at 6 n.1.

8–9. However, those same standards specify that when drywall is stacked vertically, it should be positioned against a wall according to specific parameters.[7] *Id.* Although the Gypsum Construction Book cautions that improperly vertically-stacked drywall is more likely to fall if it does *not* adhere to these specifications, Rush offers *no evidence* to demonstrate that *any* drywall at the construction site violated these specifications—much less any evidence that drywall that fell on him was staged at an inappropriate distance from walls. *See* Defs.' Mot. at 10–11. There is no evidence on the record that the stacks of drywall that fell on Plaintiff (or any other stacks on the site) did not comply with this provision of the Gypsum Construction Handbook—that is, there is *no* evidence on the record indicating the distance from which *any* drywall sheets on the construction site were stacked from the wall. Indeed, Rush himself did not see how the drywall that fell on him was stacked.

The Randle Report relies on photographs of drywall stacked in an unidentified "hallway" at the construction site. *See* Randle Report at 7, 9, 12. Mr. Randle observes that the photographs show that stacks of drywall with "more sheets" appeared to be placed at "steeper angles" against wall framing than stacks with fewer sheets. *Id.* But this observation says nothing of whether or not any of these "stacks" violated the industry standards specifying the correct method for vertical storage. Rather, the only testimony on the record as to the status of any stacks of drywall on the site was from Mr. Coakley, who indicated that he saw the drywall at issue before the incident and that it appeared to be "stocked properly." Coakley Dep. 30:2–20. Moreover, Rush himself disputes that the incident occurred in a "hallway," claiming that it occurred in a "room." Pl.'s Resp. Stmt. ¶ 10; Pl.'s Opp'n at 3 (citing Rush Dep. 49:15–20). In sum, Rush (through his expert)

---

[7] The Randle Report also cites no authority directing that vertically-stacked drywall must be "secured."

relies on photographs of *different* stacks of drywall than those that fell on him, staged at (according to Rush) a different location than the incident occurred—without offering *any* evidence that even those stacks of drywall violated the industry standard upon which his expert relies. This "evidence" is insufficient to demonstrate that Defendants breached any duty of care. Because Rush has not offered any evidence showing that Defendants improperly placed the drywall, he also cannot establish that there was a "hazardous condition" such that Defendants breach their purported common law "contractor" duty, or the OSHA provision relied upon by Rush. In sum, Rush has failed to offer evidence that would allow a reasonable juror to conclude that Defendants "breached" any duty of care; the record contains no evidence from which a jury could reasonably infer—without resorting to speculation—that Kamco or Coakley improperly stacked the drywall sheets at issue without an "alternative type of disturbance." *See Martin v. Omni Hotels Mgmt. Corp.*, 206 F. Supp. 3d 115, 126 (D.D.C. 2016). The "possibility that a jury might speculate in the plaintiff's favor . . . is simply insufficient to defeat summary judgment." *Id.* at 124.

Although Plaintiff points to a number of "disputed" facts, the Court concludes that none of them are material to whether or not Defendants breached a duty of care. Rush notes, for example, that the parties dispute (1) where the incident occurred (in a room or hallway); and (2) when the specific drywall that fell on him was delivered to the site. Pl.'s Opp'n at 3; *see also* Pl.'s Resp. Stmt. ¶¶ 4, 10. Taking Rush's view of these facts would not alter the outcome of the Court's conclusion that he has failed to offer sufficient evidence to demonstrate that Defendants breached any of the duties he cites.

The mere occurrence of an accident fails to establish negligence; a plaintiff must demonstrate that the defendant failed to provide the applicable standard of care. *Girdler v. United States*, 923 F. Supp. 2d 168, 187 (D.D.C. 2013); *see also Jones v. Safeway Stores, Inc.*, 314 A.2d

459, 460 (D.C. 1974) ("The mere happening of an accident does not impose liability or permit an inference of negligence."). Rush's failure to offer evidence in support of any "breach" requires summary judgment in Defendants' favor. As such, the Court does not address the remaining arguments raised by Defendants, including those related to proximate harm, contributory negligence and assumption of risk.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' [33] Motion for Summary Judgment. This case shall be dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge

**Date**: September 13, 2022